Your Honors, and may it please the Court, my name is Paul Porter. I represent Dwayne Hawkins, Wesley Roach, and Barry Harrison in this collective action against the South Carolina Department of Mental Health. This is a race and retaliation, wage-based and appellants are present employees of and have a combined 90-plus years of service to. Lower Court, Judge Anderson presiding granted summary judgment as to each claim. That ruling was reversible error because the lower court did not apply the approach we are asking this court to condone here today, that being the mosaic approach as termed by Judge Posner in 1994. On the wage discrimination issue, nothing else. On the wage discrimination issue, do you say you can't win under a McDonnell Douglas, at least to create a prima facie case? On the wage discrimination, we say we can win under both. And that being the second ground that we think it's reversible error that we I would like to talk to you about just the wage discrimination case for a minute. Yes, Your Honor. My edification. Is this claim that you're making a wage, raise discrimination-ish claim against the employer, is that reflected in your EEOC filing? Yes, Your Honor. Maybe you don't have to find it or the state, maybe you can, but tell me exactly the words that you think raise that issue. The verbiage is actually stated in the appellee's brief where they make their bailiff's argument, I would contend. They contest raises made to similarly situated white employees in September of 2011. Well, I kind of looked maybe, I thought I saw maybe in one of their EEOC filings and not in others, but you, you just, do you have the exact language? Can you put your hands on it immediately? I don't want to take too much of your time. Do you have the EEOC filing? Maybe you can do it when you come back up. Yes, sir. And the EEOC charges are in the record at 187. I know, I read them. I'm asking you what you say, the language that you say reflects that at EEOC you were making this wage discrimination claims. Now, tell me what is your theory as to those wages? Tell me what your theory is as to discrimination on wages. Certainly. Each of the appellants had a prior lawsuit against the appellee. That was settled in December 10, January 11. It involved a raise to each of the appellants of a property. But that's not your argument about wage discrimination in this case, is it? No, Your Honor. The background. I want to know what your argument is, your theory of your argument. The theory of the argument being that the way the raise is given to comparators ten equalize the comparators, but rather put the comparators ahead of the appellants once again. I'm sorry. Go ahead. No, go ahead, please. Is your argument, is your argument at least, we'll see if it's reflected in what you filed, is your argument that the wage chart, or whatever you call it, raise, wage program, before your first lawsuit, the first lawsuit, was discriminatory? It was discriminatory. Is that your argument, I said, that the wage structure was discriminatory at the time these people filed their first lawsuit? That's your claim, isn't it? That was the prior claim as well, yes. This claim is that after the settlement here, that the same wage structure was somehow the same. That discrimination is just put right back in place after the settlement of your first suit, correct? Correct, Your Honor, and I described ... Now, what's your best evidence of that, as to the wages still being discriminatory? The salary charts themselves, Your Honors, and ... Were they allowed into evidence? Your Honor, the lower court under Carter v. Ball ... Were they allowed into evidence? No, no, Your Honor. Why was that error? Under Carter v. Ball, this case is different from Carter v. Ball. I didn't ask you to say why it was different. I asked you why it was an error for it not to be admitted. It was error in so much as the evidence here is not lacking in context. It has the full context necessary to make the basic numerical ... I didn't find out a lot. Maybe I missed it. I did look for it. I'm trying to find information about that chart, and I see some people say at some point it's just simple math. How was that ... Is it in the record how that chart was put together? The chart was produced by the defendants in discovery. Okay. So, the chart was put together by the department. That chart that shows a person's name, what their job title is, classification, what their band is, time of service, and pay, that came from the government. The appellee, and I would yield to Mr. Bettis, but ... I'm not asking about that. But I believe ... That came in discovery, so you just looked at that chart and drew conclusions from that chart. Based on basic arithmetic and then division to get your averages, Your Honor. Is that your only evidence of discrimination? I'm not saying that it's not enough. Is there any other evidence on your wage discrimination claim other than that chart? With respect to the wages, I think the other evidence you would look at would be ... Well, there's a wage proponent to the racial and a wage proponent to the retaliation. I'm looking right now at race discrimination, not retaliation. I think with race, the additional evidence, in addition to the chart, would be that this has happened before. What do you mean, this has happened before? What does that mean? That was the basis of the underlying first lawsuit. So, there's a pattern at DMH of underpaying black employees in comparison to white employees. Oh, no, you've released all claims. You've released all the claims arising against DMH up to December 30, 2010, have you not? Correct. What I was pointing to, in addition to the salary charts, which we think are sufficient, was any additional evidence of wage-based race discrimination would be the prior conduct in the pattern. But that claim has been settled. There's no contest to it. Okay. I found your argument to be something of a moving target. So, I'm now a little ... Well, actually a lot confused. It was my understanding that ... And please correct me where I'm wrong. You sued in 2009. You settled the claim. The Department of Mental Health said there have been these salary compression problems that happen when people have been working for a long time. Their salaries have not gone up at the same rate that new people are being hired at. So, the Department of Mental Health said, yep, this is a problem. We're going to correct it. They corrected it with respect to the appellant. But not only did they correct it prospectively, the appellants, unlike the white comparators with whom you are now making the comparisons, also received retroactive increases. Is that correct? As per the formal lawsuit settlement, yes. Right. But they received retroactive increases. So, then what the employer did was to address the problem of salary compression that it found without regard to race across the board. It implemented these adjustments that resulted in the comparators also receiving the benefit of the salary compression adjustment. And it's that salary compression adjustment that went to other employees that you're challenging. Is that correct? Yes, Your Honor. Although those comparators, I don't see how you can say that that put the comparators ahead of appellants because the appellant, first of all, they all received the benefit of the salary compression adjustment, but the appellant also had the additional benefit of the retroactive adjustment. So, what I'm trying to get to is what is your basis for saying that the employer is arguing and what the district court found was levelizing actually results in the comparators being treated better? That if they had truly been levelized that there would not be an underpayment ongoing since those fall 11 raises. But the fall, the settlement, I'm sorry, what fall, the January 2000, the appellants received their salary compression adjustments in January of 2011, right? Correct, Your Honor, as part of their settlement. Right. And then the comparators received salary compression adjustments in October, correct? Correct, Your Honor. And you're saying that that put the comparators ahead of the appellees and that's what I'm asking you to explain because the district court concluded, and I'm having trouble understanding why that isn't a part, why it isn't the remedy for the salary compression that was found, but how it puts them ahead because the raises received by the comparators are prospective only, whereas the relief received by the appellant was also retroactive. Well, the relief they received for their prior lawsuit, they had to file a lawsuit to achieve that relief. All I'm asking is how can you say that, as you did, all I'm asking for is your support of your position that the comparators who received in October 2011 the salary compression adjustment are better off than the appellants who received the salary compression adjustment in January 2011 when the appellants also received, as the comparators did not, a retroactive, the salary increase retroactive three years? Because even if you, because if you build on the salary increase going back three years, how could it, as a matter of math, put them in a worse position? Your Honor, what our claim is focused on is the present and ongoing wage disparity, not the impact. Do you think what your clients received in forward pay in that first lawsuit, do you think that was compression study pay or do you think you think it was pay to put them right where they should be at the time the testimony of Eleanor Odom, who's the HR director, it was to put them on pace with where they said they should have been, where their comparators were? In other words, you see that as, I'm just asking because quite frankly, I'm with Judge Duncan. I had a lot of trouble understanding both sides' arguments in this case. We'll get to Mr. Bettis in a minute. Is your argument that as of the settlement date, your clients were on equal footing where they should have been with all the comparators, but then the comparators, some formula applied to that chart, they got pay increases and you didn't. So your argument is that, isn't it the same argument continued that the pay structure is discriminatory? Yes. This is so important, so I just really want to make sure because I thought I heard you say to Is that right? The settlement was in 2010 that in the settlement, the appellants received their salary compression adjustments. Do you think that the settlement included a salary compression adjustment or not? Your Honor, what I was referring to was the testimony of Eleanor Odom, the HR representative. Please, just I'm putting to one side whether there is any record support for what you're about to say, but just yes or no. Was there a salary compression adjustment incorporated into that settlement? I believe had it properly, perhaps intended, but not delivered. It was a yes or no question and it is critical because I think we really are, or I'm speaking for myself, I'm struggling here to understand your argument and I'm sorry, I've now taken over Judge Harris's. No, no, no, it's the same question. It's the same question. What happened, it seems to me, and that's why I keep asking this. In 2000 and whenever it was, the appellees received what the district court said was a salary compression adjustment retroactive back to 2006. So in other words, whatever pay raises would be forthcoming would be based on an increased amount going back to 2006. So that's why I'm having trouble understanding exactly what you're arguing and why you're arguing it put appellants in a worse position in comparators. And I guess at bottom, I'm trying to figure out whether your challenge is that there is a continuing impact of the prior discrimination or whether there are independently existing wage disparities. I believe more so edged toward the independently, i.e. a new wage disparity arose in fall 11 completely. A new wage, and that was why I was, that's why I've been somewhat confused by some of your answers because. Your answer has been inconsistent with that position, I think. If it's an independent wage disparity, that's a different argument and it seems to me inconsistent with saying that the raises received by the white comparators post-settlement put them in a better position. Those two are not, those two positions are not consistent. And if your argument is actually the latter, then it takes me back to Judge Shedd's question about where that is in the EEOC charge. And your honors, my time is up. I think it's directly developed from the EEOC charge where it says the raises on September, October 11, given to TS-4s, and obviously the raises caused the pay disparity in fiscal year 12, 13, and 14, 13, 14 that we're talking about here today. But you just said that you were focusing on independent wage disparities, independent of the settlement adjustments, I thought. Independent, in so much, I don't want the prior settlement to become a red herring to the issue that's occurring today. Okay, and what is the issue that's occurring today? That they're being paid $1,000 less than similarly situated white comparators without a stated reason in the record. Are you based? I'm sorry. No, no, go ahead. No, I think we're trying to get to the . . . Yeah, go, go. But if that's the case, then the district court is probably right in this analysis that the distinction is not based on race because both white and blacks receive raises under the so-called compression study raises that came later. That's how the district court said you lose because if it's just based on not getting an independent cause of action and not getting the pay raise after the settlement, the court goes that might be for some reason, but it's not based on race because white and blacks received it. And where did the . . . I'm sorry. I guess I'll give up. Perhaps Judge Harris can articulate it far more clearly than I can. Well, I don't think so, but let me just say what I thought your argument might have been, and you tell me if I'm close. I thought your argument was my clients never got their compression adjustment raise. Everybody else got one. They didn't get one. And the reason they didn't get one is because it was retaliatory. They were mad at them. They said, you filed a prior lawsuit. We're not giving you this compression adjustment raise. You people made out like bandits in your first settlement. We're done with you. Everybody else gets one. You didn't get one. But what that hinges on is that they didn't get one as part of the settlement agreement, that that raise was for something else. It wasn't a compression adjustment raise. And I'm asking you, please, did or did they not get a compression raise adjustment, compression adjustment raise as part of that settlement agreement? And may I finish? Obviously, I'm well out of time. Answer the question. I do not believe they got an equivalent compression raise adjustment. Now, the department will call what they got a compression raise adjustment. Your argument is based on that was not a compression pay raise. If they got one, it was not in compression. And I'm probably misusing the semantics. No, no, no. Listen, they got some money when they settled the lawsuit. That money represented what? Represented what? And it was to... Was it for past discrimination, to remedy past discrimination, or was it for a compression study? I mean, compression raise. I don't believe the settlement... Which was it? I'm asking you. How was it determined? What was it driven by? And full disclosure, I was not involved in the prior states on... You don't care. You argue in here. So answer that question for us. I do not believe it was a compression adjustment that would... A proper compression adjustment if it was. Even if it was, it was not proper because it was not on par with the comparators. Will you save some time? We'll call him back. Thank you, Your Honor. Thank you very much. Mr. Bettis. So what did the appellants get as a result of the settlement? Your Honor, actually, I was involved in the first suit and I defended it. And David Rothstein was the appellant, the plaintiff's lawyer. And as the record is clear, Ms. Odom's testimony and... Ms. Odom's testimony is really the best source of it. She's a human resources director there and has been for a number of years. This compression study, this compression salary analysis was being... What was it? Answer that question. What was the pay? What was the money they received, the forward-looking money? Where's the record evidence on what that was? That was a compression salary adjustment, Your Honor. According to the state. That's correct. But does that answer the question? Go ahead, Your Honor. No, no, please. When Ms. Odom's testimony... And the plaintiffs admit this. When they gave the compression increases to the other trade specialist fours who had 15 or more years experience in October of 2011, prospective only, Mrs. Odom told them that we are doing this for them. We did it for you in January. I know, but that just means that's what you want to call it. Your Honor, I believe Mrs. Odom is a very professional human... Well, she may be. But she may be. But you don't think for... Because you call it compression. That, by the way, the settlement doesn't call it compression. No, sir. No, sir. Just let me finish. Just because one side categorizes it, that doesn't bind the other side, does it? No, sir. Where's the evidence that they thought it was a compression raise? Did they even know? Did the plaintiffs in this case even know about the compression study at the time of their settlement? Your Honor, I doubt that any trade specialist four, five, or six... In other words, I couldn't find any record evidence that they knew. You don't know of any. I don't know of any, but I know that they were discussing the matter of salaries and the fact... Who is they? The plaintiffs were discussing the matter of salaries and the fact that more recent hires were receiving people with fewer years of seniority. But their lawsuit wasn't about a compression pay raise, was it? Their lawsuit, the initial lawsuit? Yes, sir. Yes, sir. They said that their salaries were out of whack. Not because of some failure of a compression study. They said it was because of their raise. Your Honor, that's correct. I would rephrase it. The defense was that your salary is not where it is because of your raise. I know that, but that's how you characterize it. That's correct. I'm talking about how they characterize it. Let me tell you, Mr. Bettis, what I think happened. It is very confusing. But I believe as settlements are wont to do, the lawsuit was settled. And at the time, they were thinking, this is what I'm surmising. They were thinking they were finally getting their due in that first lawsuit. You didn't acknowledge fault. They said just that. But they said, look, we sued on race discrimination and they're giving us money. They know they've done us wrong. It turns out at the same time, it appears to me, I know it's true from the record, at least from the record, that the state was thinking about a compression issue. So the state, the state themselves said, we'll settle it. We'll give them some money because we're going to give money anyway. And so you may have characterized it as a compression raise. There's not any evidence that I can see that they thought of it as a compression raise. They thought of making them whole. So they're, and I agree, as Judge Duncans pointed out, and I'm trying to get to a question here. But they, then they have given up any claims of race discrimination according to that pay arrangement up to the time of the settlement. Yes. But I think their argument is that the compression pay raises were given to other people. And the final result of that is still discrimination because there was discrimination from the get-go in that arrangement. Well, Your Honor, that may be their claim. But of course, it's refuted by their own testimony because the charge that you were looking for says, I was... Where are you, please? I'm sorry, Your Honor. I'm on page 42 of the appendix. And it's a quote in my brief, but I'm quoting their charge verbatim. And it said, the final paragraph says, I was also denied equal wages and that all trade specialists for employees received a one-time wage increase for employees with 15 years and above. I did not receive my wage increase, which was part of a mutual understanding with the respondent. Now, all trade specialists for employees with 15 or more years. I can find it for you all in the... Oh, you were reading from your brief. Were you reading from... Yes, Your Honor. I'm sorry. No, no, no. If you can look at page 186 and 87, that's the... You just said page 42. Yes, yes. Is it what you said? 42 of the joint appendix in which you've just cited what they said. It's verbatim, but the charge itself is page 186 and 188. So the plaintiffs all acknowledge in their deposition testimony that the increases that were given and not... Well, what about this? I was also denied equal wages and that all trade specialists for employees received a one-time wage increase for employees with 15 years and above. Right. I did not receive my wage increase. Isn't that a claim of, I didn't get my wages I was supposed to get, EEOC, because of my race? That's what they claim, but right, Your Honor, but is it all TS-4s received? Well, the record evidence is clear that the TS-4s are black and white. There are plenty of both black and white TS-4s and the plaintiffs all admitted that the people who got the increases in October of 2011 were black and white. I know that, but that isn't... But by the way, if the pay scale before... Just accept this as a given for a second. If the pay scale before any compression adjustment was discriminatory, the compression adjustment didn't make it non-discriminatory, did it? No. And if it did, where's the evidence of how that compression adjustment, what factors it went into? Your Honor, I think that there's evidence in the record that Ms. Odom, the determination by the mental health was that there was not a race-based compression problem. But that's her... That's correct. That's her testimony. But your argument that it's not does seem to be supported by the fact that all trade specialists, four employees received this adjustment in October and those all included blacks. I appreciate your... Included blacks and whites who had not been party to the litigation. Is that your point? Correct, Your Honor. Although there are two problems with that, it seems to me from your perspective. One is it may knock out the wage claim, but it backs you right into a retaliation claim. That's the first problem. And the second problem is this charge said, I did not receive my wage increase, which was a part of a mutual understanding with the respondent. In other words, at least Mr. Thomas, maybe? Harrison. Doesn't... Is contesting that he got an increase at all. Well, he didn't in his sworn testimony. He did not in his sworn testimony. Did not contest. Oh, they all admitted it. And they got three and a half years back there. No, they contest they got a wage increase because of the compression study. Yeah, yeah. That's why they're contesting. I'm saying they didn't. They don't contest that in January of 2011. They got money. Each of them received a 4,000 prospective and retroactive three and a half years. They got money, but they don't. They've never agreed with you that that is for the compression pay raise issue. They think it's not. Your Honor, I'm not disputing that. I'm not in the position to do that. So then all the fact that you call it a compression... I mean, your client calls it a compression study. That's just a factual dispute as to why and how that salary was figured. And why shouldn't we send it back to figure out? I mean, we're tearing our hair out up here over what appears to be a factual dispute. Well, your Honor, I don't think that there's any dispute. If you look at the Department of Mental Health since 2008 when Buddy Watkins first got there as a building maintenance corrector, has been trying to find a way to get the trade specialist force up closer to the state average for trade specialist forces. It's a state classification, not just a mental health. They're trying to get the adjustment. They've been working on this. The plaintiffs sued in 2009 claiming that they were doing it. And by the way, not one widow that makes a difference to their claim, at least the way they assert it. They could say, we agree with you that the state's trying to do better. The state has given people raises. But they could still say, but the manner in which they did it still discriminates. Those aren't mutually exclusive. And it may well be correct that white comparator, that they're not dissimilarly situated to white comparators. But I can't tell this. Well, your Honor, if y'all would look at the chart that is in the record at pages 10, I think it's 1061 through 1072. I bet we've looked at it. I bet you have. 1061 through 1079. What's ironic is that Mr. Roach, Plaintiff Roach, who came to work there in 1987 after the other two was making more than the two plaintiffs who'd been there before him. He was also making more than Kurt Morgan, who is one of the favored people that he talks about. What you'll see in this list is that people with different years of service, trade specialist force, that in some cases, white employees are making more than black. Why shouldn't that be part of the record in specificity in the court rule on that? Because I looked at that chart, and quite frankly, that chart's a mess. Because at least in my joint appendix, it's out of alphabetical order at points. You can't tell what year it's referring to. So for me, it's a mess. Maybe others' copies aren't like mine. But if that's true, first of all, you argued against that chart coming in? No, I argued against the arithmetic and the statistics. I provided the chart. Okay, well then, by the way, why isn't it just what they did? Why isn't that simple math? It's not simple math, Your Honor. In some instances, I understand. The chart doesn't reflect. There are factors that aren't reflected, such as level of specialization. I mean, there's a- That's correct. If the chart is infirm, I understand. But the point is, the chart is used to apply to them. They can use that. If you want to attack the specifics of it with other information, you can do that. I did not attack the chart. Like I said, I provided the chart. Right, but you don't think- Do you think that chart provides at least a prima facie basis for race discrimination? No, sir. And why? No, no, no, wait. What in the record did you say? What in this record did you say about that chart specifically doesn't support it? Your Honor, I didn't say anything in the record. But if you look at the chart, you can see- I have looked at it. And I've looked at it, and I'm back with Judge Duncan. I honestly, it's hard to make out of here what's going on here. And it seems to me, they can take your chart. They say doing the math, which they're entitled to do, that black employees are paid less than white employees. Now, you may have a specific answer to that, but it seems to me that maybe that should be given, all that placed in front of the district court, and let the district court decide on that full record. Because y'all are at odds about what the claim even is. And the theory of the case is, it strikes me. And it strikes me, this is more of a speech than a question. The magistrate judge and the district judge, let me say, I know both of them hold them in very high regard. But it seems to me that they mistook, at least I misunderstood the claim on the pay raise to be not continuing discrimination, but they took it to be that was just an adjustment because of compression. And I look back, and quite frankly, I was trying to figure out, was this a new issue or not? But at page 29 of the plaintiff's brief, they say, the district court finding recontextualized the ultimate inquiry in appellant's wage-based claim to overlook the fact that regardless of who got raises in fall of 2011, the appellants were paid less than their white comparators after those raises went into effect. That seems to me, that clearly is saying, at least I think that's saying, and I think it does, when we settled that lawsuit earlier, we finally were on equal footing. But lo and behold, eight months later, we turn around and the state, who dued us again? Because they took that chart that we claim the whole time was discriminatory, and that's the chart they worked off of somehow to get the pay raises. Now, by the way, is there any information in this record of how the compression pay raises were calculated? Ms. Odom testified that they were trying to get to a percentage, a higher percentage. No, no, no, I'm not asking that question. There's no formula. There's no formula in the record. And there's no further explanation. We know what her objective was, but we don't know how are the mechanics of her getting there. We do not. We do not. That's correct. Your Honor, with respect to the, I want to address the other issue if the court has questions about that. But I would say that when your budget, there's no question that this budget was whacked by a million dollars for the physical plant services. Building maintenance had to take $300,000 of that. They took the existing general, these plaintiffs are all general maintenance employees. They took the two, they had four general maintenance shops. They collapsed them to two. They reassigned some workers to other units. They took the two strongest supervisors and designated them the head of two remaining general maintenance shops. They took the other two supervisors and moved them into other areas. They did not open this all up to competition for selection. They were trying to minimize the disruption and to save as many jobs as they could. And I think they did that. It's just, I don't know of any law that says that when you're- At this point, I'm going back to the wage claim. At this point, do you think the other side makes a stronger argument for race discrimination in the way these so-called compression raises were given out? Or do they make a stronger case for retaliation and not getting an increase because they protested unequal treatment? Which do you think is the stronger argument? Your Honor, my- Let me guess, you're going to say neither one is stronger. No, no. I mean, if you're asking me which is stronger, my belief is that they would say it's retaliation. I'm asking what you say, not what they say. I'd say that they're claiming retaliation because, as Judge Duncan pointed out, and the record reflects it, that the increases that were given were whatnot. Now, they may say that, well, we still were $100 behind, but you're not going to find that pattern in the record. You don't know that. Maybe you say that information's not in the record, but I know that. Yeah, but that's no good. I mean, it's not good for me right now. No, I understand. But I'm saying that, so you ask me which is stronger. But to make it clear, the information may be good, and the fact that you know it, I know you must have said this, I was just saying the fact that you know it doesn't really do us any good on this record. That's why the stronger is the retaliation. Can I ask you a little bit about the retaliation claim? Yes, ma'am. Because I also am really kind of puzzling on that one. Because on that one, at least on the face of it, they've got a really good claim, right? Everyone gets this compression adjustment raise except for the people who brought the prior lawsuit. And the states actually sort of avowed responses. Oh, that's because you brought a prior lawsuit. So that sounds really bad so far, right? So classic retaliation, you're actually, it's because you brought a prior lawsuit that you're not getting the raise. It only works if part of the settlement from the prior lawsuit already incorporated the compression adjustment raise. So, and this may be where we started, but I guess I want to come back to it. What's the best, is there any evidence in the record about whether that raise, at least at the time, was understood by the plaintiffs, or I guess by anyone, to incorporate that compression adjustment? Yeah, the honest answer is I don't know that there's any evidence in the record on that one way or another. Is there any specific dispute in the record? I'll take any clarity here. And excuse me, what's the question? Is there any dispute? Was that ever joined as an issue between the parties? That was the issue in the preceding case. That was the issue in the 2009 case. It was our salaries are discriminatory because we- No, no, no, but you're labeling a salary challenge as a compression challenge, and that's not necessarily the case. What I'm asking is, was there, did appellants ever challenge, was the issue ever joined that what happened as a result in 2010 was a salary compression adjustment? You're saying that it wasn't articulated. Have the appellants ever challenged it? I don't know that they've ever challenged it other than in their briefs in this case. Thank you. Again, I'm happy to respond to any questions about the other parts of the record if the court has any questions. I don't think, again, that they were trying to minimize upheaval and I think the reassignment of people. I'd also say that the evidence refutes the claims about Mr. Balknight. That job description did not require that you have worked in the plumbing unit. Mr. Harrison didn't apply for a building manager job that came open in January of 2012. Your Honor, there's also evidence in the record that Mr. Watkins put on a supervisory training. He scheduled supervisory training classes for people to, it's kind of a follow-up to 2010. And it's hard to understand the plaintiff's theory in this case. But if the plaintiff's theory is that the pay raise they received prospectively from that settlement was for racial discrimination and not part of the compression issue. And if then aren't both sides back at this point you were at when the previous lawsuit was filed, they're attacking the general pay scale for race reasons. Aren't you back in exactly the same? I think there's no question. Yes, sir. Yes, sir. Anything else? Thank you, sir. Thank you very much for answering those questions. Thank you very much. Mr. Porter, you've saved some time. Do you need a break after this? Do you need a break after this? Me too. Mr. Porter? Yes, Your Honors. And I think it was already identified. But with respect to the charge language, I would contend that bottom paragraph on record pages 187, 312, and 431, and it's all identical. It's just each appellant's specific charge is where you have the raises to comparators in September 30th preserved in the charge. And I think the pay disparity flowing there from is reasonably within the confines. What language? What specific language do you point to? That entire bottom paragraph on each and every one of those pages. Which is what? Just read it to me. Yes, Your Honor. Is it, I was also denied equal wages. Is that paragraph? Yes, Your Honor. Okay, thank you. And I found it now so I can read it if you. Well, I have it. I was also denied equal wages. That one. And that all trade specialists for employees, that language. Yes, Your Honor. That's the language in the charge. How does that language put anybody on notice of this claim that you're making? Because if they were denied equal wages on that day, then obviously the wage disparity would result from the day upon which they were denied the equal wages. Denied the raise that everybody else got. And when we get to... Did you argue the case that way to the court below? Did you make that clear to the court that was your argument? What we argued... No, because y'all... I'm talking about convincing Mosaic. If you're right on that provision, do you need convincing Mosaic? To the other aspects, not the wage claim, Your Honor. And we did argue both to the court below. Our focus was more semantically on the just simple fact that they're being paid less. Without... You know that you can be paid less and that doesn't create a cause of action. On the basis of their race, though. With race being the only record... Can you articulate right now what your theory, at least going back to the wage discrimination, not retaliation on wages, but race discrimination on wages. Can you articulate that for me? Yes, Your Honor. And without getting too theoretical. Can you do it? Yes. Okay. If DMH is right, if their legitimate reason for the raises is that you already got your raises, then the starting lines should be even. However, when these raises came in, in September, they're not even. They're being paid less for no reason than similarly situated white employees. In your reference for they're not being paid the same, is that chart? Correct. DMH's own salary chart, Your Honor. By the way, I looked at that chart. It's not so clear from that chart what you're saying is right, quite frankly. Because there are some of these, some of your clients are getting a lot more money than white folks. I know what y'all did. Y'all seem to have just taken the total salary and averaged them out, kind of. Maybe that's acceptable. Maybe it's not. But I went to that chart expecting to be able to find clearly that your clients with their time in grade were getting less money than others. But they're often getting as much or more money than others. Especially when you factor in the specialist designations, at which there's no way that you can compare apples and apples in that chart. But they're not specialist designations in the chart. I was just trying to... There's nothing in the chart that allows you to compare trade specialists, similarly situated individuals. You just took it as trade fours. You just compared fours, right? Correct. And that was not... Yes. But again, I would say to go back that maybe the other side can come forward and say they make the assertion that specialists are paid differently because of their specialization. But at this point in the record, we don't know who the specialists are and who they aren't, do we? Correct. You've just taken the chart they supplied and looked at what they told you. You looked at trade specialists, whatever. Four. That's what you went by. Yes, Your Honor. I used the information given. We asked for all relevant information to their defenses. What you have is what we were given. So where a comparatory issue was not raised before the lower court by the appellee, it was not ruled on before the lower court. Here to somehow say they're not proper comparators because of specialization when I have nothing on it is truly hamstringing the appellant. And I am out of time, Your Honors, but I'll answer any more questions. I really just want to clarify. So your retaliation claim, the difference between the... You have two claims stemming from these 2011 raises, right? One is retaliation. Everybody got it except for the people who sued before. And the prior settlement did not cover that. And there's no sort of justification for that because the prior settlement did not, in fact, include a compression adjustment raise, right? That's the gist of your retaliation claim? Correct. Okay. And on wage discrimination, it's that all of our sort of forward-looking post-2011 wage discrimination stems from those initial raises. And we've shown that from the chart. Correct. And so you're not relying on anything that happened, anything in addition to the unequal 2011 raises to show your wage discrimination claim. It's just about those raises. Is that right? And the pay disparity. I don't mean to put words in your mouth, and the consistent pay disparity that would follow. I mean... All attributable to the raises. Yes. Yes, Your Honor. That's another thing that happened after 2011 that you're complaining about. No, not at all. Other than the disparate treatment components of the claim, of course. Focusing solely on the wage claim. Yes, Your Honor. Thank you very much. We'll step down, greet counsel, and go directly to the third case. Thank you.
judges: Dennis W. Shedd, Allyson K. Duncan, Pamela A. Harris